IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

**LORI GOODMAN**                                                                          **PLAINTIFF**

v.                                         NO. 1:18-CV-3-JM-BD

**SOCIAL SECURITY ADMINISTRATION**                         **DEFENDANT**

<u>**RECOMMENDED DISPOSITION**</u>

<u>Instructions</u>

The following Recommended Disposition ("Recommendation") has been sent to Judge James M. Moody Jr. Either party may file written objections with the Clerk of Court. Objections should be specific and should include the factual or legal basis for the objection. To be considered objections must be received by the Clerk within 14 days of this Recommendation's filing. By not objecting, the right to appeal questions of fact may be jeopardized. And, if no objections are filed, Judge Moody can adopt this Recommendation without independently reviewing the record.

I.     Background

Lori Goodman applied for social security disability benefits with an alleged onset date of August 6, 2015. (R. at 51). After a hearing, the administrative law judge (ALJ) denied Ms. Goodman's applications. (R. at 24). The Appeals Council denied her request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision. Ms. Goodman filed this lawsuit seeking judicial review.

## II. The Commissioner's Decision

The ALJ found that Ms. Goodman had attempted to work after the alleged onset of disability, but that it was an unsuccessful work attempt. (R. at 14). The ALJ found that Ms. Goodman had the following severe impairments: chronic obstructive pulmonary disorder (COPD), asthma, osteoarthritis, carpal tunnel syndrome, and obesity. (R. at 14).

The ALJ found that Ms. Goodman had the residual functional capacity (RFC) to perform light work and could occasionally stoop, kneel, crouch, and crawl; occasionally reach overhead with the right upper extremity; frequently, but not constantly, use the bilateral upper extremities to finger and feel; and should not have concentrated exposure to temperature extremes, dust, fumes, humidity, or other pulmonary irritants. (R. at 16). The ALJ took testimony from a vocational expert (VE), who testified that the assigned RFC would allow Ms. Goodman to return to her past relevant work as social service worker as the job is generally performed. (R. 20–21). The ALJ held, therefore, that Ms. Goodman was not disabled. (R. at 21).

## III. Discussion

Ms. Goodman argues that the ALJ's credibility determination is flawed because the ALJ did not properly consider the *Polaski* factors, failed to identify any inconsistencies that would detract from her credibility, and improperly discredited her subjective complaints based on the medical evidence alone.

The task of the Court is to determine whether substantial evidence supports the Commissioner's findings. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means "enough that a reasonable mind would find

it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In performing this analysis, the Court must look not only at the evidence supporting the Commissioner's findings, but also, evidence that detracts from the decision. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015).

Courts generally defer to the ALJ's credibility determination. Even so, that determination must be supported by good reason and substantial evidence. *Milam*, 794 F.3d at 984. In assessing the subjective complaints of a plaintiff, the ALJ is to consider such matters as the plaintiff's daily activities; the duration, frequency, and intensity of pain; any precipitating and aggravating factors; the dosage, effectiveness, and side effects of any medication; treatment other than medication; and functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). This does not require a methodical discussion of each factor, as long as the ALJ acknowledges and examines these considerations in assessing the claimant's subjective complaints. *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

Ms. Goodman argues that the ALJ gave no proper consideration to her work history. The ALJ wrote that, "[c]onsideration was also given to all the evidence related to the claimant's prior work history." There is no further discussion of Ms. Goodman's long work history, which stretched over twenty years. (R. at 156).

The Commissioner argues that the ALJ's single statement is sufficient. Were the rest of the credibility factors properly considered, this single sentence might satisfy the requirement to consider all the credibility factors. Here, however, there are other flaws with the ALJ's credibility determination. Not only did the ALJ fail to discuss Ms.

Goodman's work history, but when this is considered alongside the other inadequacies, Ms. Goodman has overcome any presumption that the ALJ properly considered her work history with this boilerplate statement.

Ms. Goodman also contends that the ALJ improperly considered her daily activities, which the ALJ noted include "eating breakfast with her husband, watching television, reading, using a computer, and visiting family." (R. at 18). The fact that a claimant "tries to maintain her home and does her best to engage in ordinary life activities is not inconsistent with her complaints of pain." *Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th Cir. 2005). "The test is whether the claimant has 'the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" *Id.* (*quoting McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc)). Light housework and other similar activities, standing alone, do not support a finding that a claimant can perform fulltime, competitive work. *Baumgarten v. Chater*, 75 F.3d 366, 369 (8th Cir. 1996).

The ALJ cited to hearing testimony in considering Ms. Goodman's daily activities. Ms. Goodman testified, in part, as follows:

> Well, I get up in the morning, usually take care of my personal hygiene, shower, all of that. If I eat breakfast, it's just, like, a bowl of cereal. My husband goes out for breakfast. And I just basically kind of sit around the house. I'll watch TV. You know, read the newspaper. Might sit down at the computer for 15, 20 minutes at a time, and just read news headlines or something like that. And then some days, just because I always was so active, my husband will take me out. And I'll spend the day with my sister or some of the kids or something like that, just to get me out of the house.

(R. at 40). She also testified that she used the computer for up to twenty minutes at a time for light reading. There is no activity in this testimony that indicates the ability to engage in light work.

Most concerning, however, is the ALJ's statement that "[t]he undersigned suspects the claimant is still working." (R. at 18). The ALJ had already found that Ms. Goodman had not engaged in substantial gainful activity since her alleged onset date. (R. at 14). In support of his "suspicion," the ALJ pointed to nothing in the record, and this Court finds no support for that statement.

The ALJ references a treating physician's note from August 17, 2015 stating that, "[Ms. Goodman] is able to work and is employed as her pain is controlled with pain meds." (R. at 634). This exact note first appears in June 17, 2015 records. (R. at 639). It continues to appear in the "History of Present Illness," "Lumbar Spine/ Lower Back" section of medical records from that point forward. (R. at 634, 618, 612, 600, 594, 588, 583, 564, 555, 551, 539). Additional notes are added to this section as time progressed, but those notes continued to be repeated in subsequent records. (R. at 612, 600, 594, 588, 583, 564, 555, 551, 539).

The Commissioner argues that this note supports the ALJ's suspicion. The more reasonable assumption is that the note is simply a repeated, historical note rather than a comment on Ms. Goodman's then-present situation. Notably, wage records reflect that Ms. Goodman had earned *no income* since 2015. (R. at 154–67). The ALJ did not refer to any medical records after August 17, 2015 to support his suspicion.

The ALJ's suspicion is not only unsupported by the evidence, it is contradicted by earnings records. The Commissioner maintains that the ALJ "properly noted that Plaintiff may have still been working at the time of her hearing." (*Doc. 13*, 7). The Commissioner offers no legal authority to support the notion that an ALJ's suspicions, feelings, or instincts constitute substantial evidence. Indeed, judicial review would be futile if courts were required to accept an ALJ's suspicions, unsupported by record evidence, as "substantial" evidence.

"The ALJ must neutrally develop the facts." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Substituting personal suspicion for evidence falls far short of that duty.

### IV.     Conclusion

The ALJ failed to perform a proper credibility determination. For that reason, the Court recommends REVERSING and REMANDING the decision of the Commissioner with instructions to develop the record as necessary, to consider Ms. Goodman's credibility based on evidence, to set forth specific reasons for all findings, and to fully and properly consider all the evidence of record.

Dated this 3rd day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE